```
                IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF GEORGIA

                         ATLANTA DIVISION

UNITED STATES OF AMERICA      :
                              :       CRIMINAL INDICTMENT
         v.                   :
                              :       NO. 1:10-CR-451
RANCHHODBHAI LAKHA            :
```

BRIEF IN SUPPORT OF GOVERNMENT OPPOSING BOND MODIFICATION

Comes now the United States of America, by Sally Quillian Yates, United States Attorney, and Joseph A. Plummer, Assistant United States Attorney for the Northern District of Georgia, and files this "Brief in Support of the Government Opposing Defendant's Motion to Amend the Conditions of Bond.

I.

**Facts**

On October 4, 2010, defendant was arrested on a complaint which charged him with abusive sexual contact of a woman airline passenger who woke up while defendant was sexually assaulting her, in violation of 18 U.S.C. § 2244(b).  A federal grand jury subsequently returned an indictment which charged defendant with sexual abuse of a person incapable of declining participation because she was asleep (18 U.S.C. § 2242), abusive sexual contact (18 U.S.C. § 2244(b)) and assault (18 U.S.C. § 113(a)(5)).  The sexual abuse charge carries a maximum sentence of life imprisonment.

On October 4, 2010, the Court set a bond which, in addition to the standard conditions of bond, provided that defendant was released in the custody of his wife and that he not have any unsupervised contact with anyone under the age of 21 years old. The Court further explained to defendant's wife that she was to supervise her husband and directed that she notify the Court if he violates any condition of bond.

On Wednesday, November 10, 2010, defense counsel contacted the government by e-mail and requested that his bond be modified so that he could play golf and visit male relatives:

> Joe:  The bond restrictions on our client require that he remain in the presence of his wife at all times.  This was very reasonable in light of their planned trip to Florida shortly after his bond hearing.  However, this condition is starting to become somewhat unwieldy in that he must accompany her wherever she goes and prevents him from even visiting with male friends or playing golf.
>
> We'd like to request that Judge Baverman ease this restriction to evening hours, perhaps requiring only restricted hours of 10:00PM to 7:00AM.  We'd like to present that request at the pretrial conference on the 16th.
>
> Would you kindly consider not opposing this change in bond conditions?  If you don't oppose, I'll draft a motion and state that the government doesn't oppose.

Yesterday, on November 15, 2010, defense filed a motion requesting that the Court modify his bond so that he is supervised by his wife during the hours of 7 p.m. to 7 a.m. so that he can work a part-time job for approximately 15 to 20 hours.  A job which he failed to notify both pretrial services and the Federal Bureau

of Investigation (FBI) that he maintained.  Consequently, both agencies reported that he was either unemployed or retired.  The government contacted defendant's pretrial services officer, Dennis Tudor and he advised that: (1) he has met with defendant twice and each time defendant has complained about the conditions of supervision; and (2) defendant mentioned something about working part-time after supervision began.

The government objects to this request for modification because it essentially amounts to defendant coming home in time for supper and bedtime.  The government further objects to a modification of bond so that defendant can play golf because this presents a moral hazard because women play golf and staff golf courses.  The current bond conditions are reasonable because of the following factors:

> (1) Mr. Lakha is not incarcerated or confined to his residence or a half-way house; (2) he is not subject to electronic monitoring ; (3) the Court did not impose a curfew; (4) Lakha calls his pretrial services officer and the officer visits him, instead of reporting to the probation office; (5) he is not prohibited from going to the driving range, playing golf, leaving home, receiving visitors or visiting male relatives as long as his wife accompanies him; (6) bonds are rarely agreed to by this office when the nature of the highest count charged is so serious that defendant faces a statutory maximum of life and a guideline range sentence of approximately 120 months; (7) despite obtaining dismissals with respect to related conduct, he did not learn from the experience and engaged in the conduct here;  and (8) based on the age of the victim and defendant's unusual statement that "you'll see that I'm not a pedophile," the Court ordered Mr. Lakha not to have unsupervised contact with minors.

The government is not without sympathy for the wife and requested defense counsel to propose a suitable arrangement which would allow the defendant to remain at home under supervision while the wife conducted errands.  Defense counsel filed the instant motion to modify bond conditions.

II.

**Legal Authorities**

Title 18 U.S.C. § 3142 governs the release and detention of a defendant awaiting trial and it permits the government to move for detention when either one of two conditions arises.  First, the government may move for detention when the case involves

> (A) a **crime of violence**;
> (B) an offense for which the **maximum sentence is life** imprisonment or death; or

18 U.S.C. § 3142(f)(1)(A)-(B).

Second, the government may move for detention in a case that involves

> (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f)(2)(B).

The court in determining whether to release or detain the defendant must "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of [18 U.S.C. §3142] will reasonably assure the appearance of such person as required and the safety of any other person and the community."

18 U.S.C. § 3142(f).  Among the factors to be considered during the hearing are (1)the nature of the crime, including among other things, whether it involves a minor victim, (2) the weight of the evidence, (3) the history and characteristics of the persons and (4) the nature and seriousness of the danger to a person or the community.  18 U.S.C. § 3142(g).

### III.

### Discussion

In the instant case, the government chooses to proceed by way of proffer, and relies upon the indictment, the Pretrial Services Report (PTSR), the FBI arrest and booking form and a copy of the recording of the October 4, 2010 bond hearing.

The facts and circumstances in this case when examined through the lense of 18 U.S.C. § 3142(g) warrant the strict release conditions here that would reasonably assure the appearance of the defendant while safeguarding any other person and the community. First, the nature and circumstance of the crime involves the violent sex crimes of sexual abuse of a person incapable of declining participation because they were asleep and abusive sexual contact in violation of 18 U.S.C. §§ 2242 and 2244(b).  See the indictment.  The crime of sexual abuse of a person declining participation carries a statutory maximum of life imprisonment. See 18 U.S.C. § 2244.  Although the victim, B.P., is not a minor, she is only 20 years.

Second, the weight of the evidence establishing defendant's guilt is strong. The grand jury returned an indictment against defendant. United States v. Hurtado, 779 F.2d 1467, 1477 (1th Cir. 1985)("it is so well settled as to be beyond cavil that the return of a true bill by a grand jury, resulting in an indictment, conclusively demonstrates that probable cause exists). Prior to the return of an indictment, the government submitted a complaint and a federal Magistrate Judge made a preliminary finding that probable cause existed to issue a warrant for the arrest of the defendant base on the following pertinent facts:

> 6. B. P., who resides in Texas and is 20 years old, advised your affiant that on Tuesday, September 28, 2010 she was a passenger on Delta Flight #2010 which traveled from the Dallas/Fort Worth Airport to Atlanta Hartsfield Jackson International Airport. Ms. B. P. stated that during the flight in question, she was seated in row 14 seat A; seat B in row 14 was empty. According to Ms. B. P., the passenger in seat C on row 14, later identified as Ranchhodbhai LAKHA, started asking her the following series of questions: where she was from; where she was going; was she staying in Atlanta; who was she meeting in Atlanta? Once the aircraft took off LAKHA told B. P. that she could put her legs in the middle seat, but she replied "no" and a short while later she fell asleep.
>
> 7. Ms. B. P. indicated that when she woke up she found that her legs were in LAKHA's lap and LAKHA's left hand was under her short pants and underwear and he was massaging her thigh and buttocks area. Ms. B. P. told your affiant that she immediately pulled her legs away and removed LAKHA's hand from her body and said "no." LAKHA responded by telling Ms. B. P. "is that okay you don't like that" and Ms. B. P. again indicated that she did not consent to this sexual contact by replying "no" to him (LAKHA).
>
> 8. After the aforementioned unconsented to sexual contact, Ms. B. P. then curled her legs up and placed her face against her knees at which time. Ms. B. P. stated that she curled up in her seat with her knees up to her

      face because LAKHA frightened her.  Despite Ms. B.P. repeatedly telling LAKHA no, LAKHA reached down between her legs while her legs were bent at her knees and her face was up against her knees, and LAKHA inserted his hand under her shorts and panties and used his hand to touch the opening or vulva region of her vagina and/or vaginal lips with his hand.  This occurred while the aircraft was preparing to land.

      9.  While on the aircraft, and prior to landing, Ms. B. P. attempted to seek help by pressing the flight attendant's assistance light.  After waiting a short while, no one responded, so Ms. B.P. got out of her seat, at which time a flight attendant asked her what she was doing.  Ms. B.P. briefly told the flight attendant what happened to her and the flight attendant took her (B. P.) to the front of the aircraft and placed her (B.P.) in a different seat away from LAKHA.

When the Air Marshal interviewed defendant to get his biographical information, defendant asked what he was being accused of doing, and the Air Marshal explained that the victim accused him of committing a sexual assault.  Defendant replied, "That is ridiculous, she was the one who was taking up two seats while asleep.  She had her legs on me, in my lap."

Third, the USPO reports both favorable and unfavorable history and characteristics with respect to the defendant. Contrary to defendant's contention that he works part-time 15-20 hours per week at Paramount Hospitality Management LLC (or Paramount Manager, Inc.), upon information and belief, on the day of his arrest, defendant advised both the pretrial services officer and FBI Special Agent Daron Cheney that he was either retired or unemployed.  He previously owned and worked at a hotel in Troy,

Alabama, but he has lived in the Atlanta, Georgia the past five years with his wife, son and daughter-in-law.

Although defendant has no prior convictions he admitted to pretrial services that he has previously been arrested for the offense of sexual harassment. A National Crime Information Center (NCIC) report indicates that he was arrested on April 14, 1995 for public peace harassment and on November 7, 2005 for intimidation-harassment. Further investigation revealed that both women in question – W.M. and R.S.V. – indicate that defendant made unwanted sexual advances toward them while they were employed at his hotel. W.M., then a college student, was approximately the same age as the current victim, B.P. Although both of these women pressed charges after a trial or hearing, defendant was either acquitted or the charges were dismissed. Nevertheless, despite defendant's two prior encounters with the legal system, he was not deterred from engaging in the conduct alleged in the instant indictment and complaint. Additionally, the FBI has identified, located and interviewed another victim of an unwanted sexual advance and sexual contact by defendant.

Fourth, Immigration and Customs Enforcement informed the government that when defendant entered the United States, his A-file was opened in the name of Ranchhodbhai L. Patel. An obituary for defendant's mother in the Troy Messenger confirmed his

connection to the Patel family:

> Jiviben Lakhabhai Patel
> Jiviben Lakhabhai Patel, 89, of Troy, died Saturday, Jan. 1, 2000 at her residence.
> Her funeral was at 10:30 a.m., Monday, Jan. 3, 2000 at the Skeen Funeral Home Chapel.
> Survivors include a son and daughter-in-law, Ranchhodbhai Lakha and Savitaben Ranchhodbhai Lakha of Troy; daughters Kashiben Chhotubhai Patel of India; Jasuben Hiralal Patel of Tracy, Calif.; Maniben Maganlal Patel of Bell Garden, Calif.; 15 grandchildren including Nakunj Ranchhodbhai Lakha of Troy; two brothers; one sister; and 22 great-grandchildren.
> A prayer service was held at 6 p.m., Sunday, Jan. 2.

Fifth, the Court directed defendant not to have direct or indirect contact with the victim, B.P.  Although the government does not allege that defendant violated this bond condition, it appears to be an incredible coincidence that the victim B.P. advised the FBI and the undersigned counsel that after indictment was returned, Amit Patel befriended her on myspace, made specific reference to Flight 2010 and asked questions about the case.  Based on co-counsel's examination of facebook, it is believed that Amit Patel might be a friend of defendant's son.  B.P. further advised the government that Minesh Patel, Viren Patel and Raj Patel attempted to befriend her.  The government informed defense counsel and they indicated that they did not encourage this contact and they demurred that there were several people named Patel.  The government is certain that defense counsel knew nothing of this matter until the government informed them of it.

**Conclusion**

The government respectfully requests the Court to DENY defendant's request for bond modification. Alternatively, the government urges the Court to permit defendant's wife to leave their residence to conduct errands, while defendant remains at home subject to some type of suitable adult supervision.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


JOSEPH PLUMMER
ASSISTANT UNITED STATES ATTORNEY

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6055
(404)581-6181 (Fax)

Georgia Bar No. 003006

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document by hand delivery:

    COUNSEL FOR DEFENDANT RANCHHODBHAI LAKHA
    Bruce Morris

    Manubir Arora

This 16 day of November, 2010

    _____
    JOSEPH PLUMMER
    ASSISTANT UNITED STATES ATTORNEY